## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Rachel Sileski, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge and belief:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a United States Postal Inspector and have been so employed since January 2006. I am currently assigned to the United States Postal Inspection Service (USPIS) Denver Division, specifically to the Prohibited Mailings Narcotics (PMN) team in Denver, Colorado, which is responsible for investigating narcotics violations involving the United States Mail. As a member of the PMN team, my responsibilities include the detection and prevention of the transportation of narcotics/controlled substances through the United States Mail, to include, conducting narcotics investigations and executing arrests of individuals for violations of Title 21, United States Code, Sections 841(a)(1) (Distribution of a Controlled Substance), 843(b) (Use of a Communication Facility to Facilitate the Commission of a Federal Drug Felony) and 846 (Conspiracy to Distribute a Controlled Substance). Part of my training as a Postal Inspector includes narcotics trafficking investigative techniques related to the identification and detection of controlled substances being transported in the United States Mail.

2. The information contained within this affidavit is based on my observations, training and experience, as well as information relayed to me by other law enforcement officers involved in this investigation. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant.

3. I know, based on my experience and the experience of other law enforcement officers with whom I have worked, that the United States Postal Service (USPS) is frequently used by

1

drug traffickers to ship controlled substances and illegal drug proceeds. Drug traffickers use the USPS because of its speed, reliability, and low cost; they also use it because they believe there is a minimal chance that the USPS will find illegal drugs sent through the mail. Drug traffickers also use the USPS because the packages they send can be assigned a tracking number, which allows them to confirm the location of their package via a toll free number or the USPS's website.

4. Based on my experience, training, and discussions with other law enforcement officers experienced in controlled substance investigations, USPS packages containing controlled substances or illegal drug proceeds often fit a common profile, which is derived from the methods used by shippers to balance their competing needs to ensure that their packages are reliably delivered, but also to ensure that the presence of controlled substances or illegal drug proceeds is not easily discovered by the authorities or third parties. Some of the most common indicators that a package is being used in a controlled substances transaction are listed below.

   a. It is a common practice for the shippers of the controlled substances and/or illegal drug proceeds to use Priority Mail Express and Priority Mail because the drugs or proceeds arrive faster and on a predictable date. These mail services also allow shippers to keep track of their shipments. With regard to Priority Mail Express parcels, shippers pay for the benefit of being able to confirm the delivery of the parcel by checking the USPS Internet Website and/or calling the toll free number for the guaranteed delivery date.

   b. Packages with controlled substances or illegal drug proceeds typically contain a fictitious return address, no return address, the same return address as the one listed for the addressee, or a return address that does not correspond to the neighborhood from which the package was mailed. These packages are also sometimes addressed to or from a commercial mail receiving agency (i.e., UPS Store, Etc.). Drug traffickers use these

      methods to hide from law enforcement the true identity of the person(s) shipping and/or receiving the controlled substances or illegal drug proceeds.

c. Drug traffickers using the USPS to mail controlled substances or illegal drug proceeds will often make payment for the mailing with cash rather than a credit or debit card.  The use of cash allows the people involved in the transaction to remain anonymous and avoid detection by law enforcement.

d. When a shipper mails controlled substances, the proceeds from the sale of these controlled substances may be returned to the shipper.  These illegal drug proceeds are commonly sent in the form of U.S. currency.  Based on my experience and discussions with other law enforcement agents, shipments containing controlled substances are sent from states where drugs are commonly produced – California, Colorado, Oregon, and Washington are four of the most popular – and U.S. currency is sent back to those drug-producing states from elsewhere.  In Colorado, for example, state law allows for the manufacture and distribution of marijuana and marijuana-infused products.  As a result, the inter-state shipment of marijuana from Colorado to other places, in violation of federal controlled substances laws, is a frequent occurrence.  In my experience, Missouri is a common destination for these packages.

e. In order to conceal from trained dogs the distinctive smell of controlled substances, or U.S. currency that has been exposed to controlled substances, packages containing these substances tend to be wrapped excessively in bubble-pack and wrapping plastic.  The seams of such packages are also often sealed with tape.  Furthermore, they are often packaged so that a smaller parcel containing controlled substances is sealed around the seams, wrapped, and placed inside a larger package.  Sometimes perfumes, coffee, dryer sheets, tobacco or other substances with their own distinct smell are used to mask the

        odor of the controlled substance being shipped.  Recently, law enforcement has discovered a trend in which the controlled substances were put into plastic baggies that were either vacuum sealed or heat sealed.  Another popular recent trend is for the controlled substances to be placed into re-sealed aluminum cans.

5. I know from training and discussions with other law enforcement officers that the following controlled substances are likely to be found during successful parcel interdictions: marijuana, methamphetamine, cocaine, LSD, psilocybin mushrooms, heroin, opium, and MDMA, as well as the proceeds from the sale of these controlled substances.

6. I know from training and discussions with other law enforcement officers that these parcels sometimes contain information and documentation related to the sales and distribution of controlled substances.  The documentation can include, but is not limited to, information and instructions on the breakdown and distribution of the controlled substances at the destination, information on the use and effects of the various controlled substances, the quality of the controlled substances, information on the actual sender, and information and instructions for ordering future controlled substances.

7. In this search warrant application, I seek this Court's authority to search USPS Priority Mail parcel bearing tracking number 9505 5121 2921 9098 2161 17 (the "SUBJECT PARCEL"), more fully described in ATTACHMENT A, for the following items, which are identified in ATTACHMENT B:

    a. U.S. currency which represents evidence and fruits of a violation of 21 U.S.C. § 841(a) and/or 21 U.S.C. § 843(b).

    b. Items of personal property inside the Priority Mail package which tend to identify the person(s) in possession, control or ownership of the parcel that is the subject of this warrant.

      c. Marijuana, cocaine, heroin, methamphetamine, MDMA and any derivatives of those narcotics.

      d. Any packaging materials.

8. I also seek the Court's permission for the United States Postal Inspector conducting the search to document the contents of the parcel through means including, but not limited to, photographing and photocopying the contents, and then re-package the SUBJECT PARCEL and cause it to be delivered to the intended recipient. However, if the SUBJECT PARCEL contains controlled substances, they will be removed and seized, along with any other items enumerated herein.

## RELEVANT FACTS PERTAINING TO THE INVESTIGATION

9. Based on my training, experience, and the collective experiences related to me by other Postal Inspectors on the PMN team who specialize in investigations relating to the mailing of controlled substances and proceeds from the sale of controlled substances, I am aware that the State of Colorado is a source location for controlled substances that are regularly mailed to Missouri and the proceeds from the sales of controlled substances are frequently returned to Colorado, via USPS Priority Mail Express and Priority Mail. Based on this information, investigators routinely conduct postal database checks for outbound parcels addressed to Missouri, in addition to, inbound parcels addressed to Colorado that exhibit some of the characteristics detailed above of parcels suspected of containing controlled substances and/or proceeds from the sale of controlled substances.

## RELEVANT FACTS PERTAINING TO THE SUBJECT PARCEL

10. On April 9, 2019, as part of an ongoing narcotics investigation, I became aware of the Priority Mail parcel bearing USPS tracking number 9505 5121 2921 9098 2161 17 (the "SUBJECT PARCEL") and that it was addressed to be delivered to 3321 Salena St. Apt. A,

Saint Louis, Missouri 63118.  I was in contact with the Maryville Gardens Station (post office) located in Saint Louis, Missouri.  The Marysville Gardens Station is responsible for delivering mail to 3321 Salena St., Saint Louis, Missouri.

11.	On April 12, 2019, upon receipt of the SUBJECT PARCEL, I observed the SUBJECT PARCEL was a USPS Priority Mail parcel bearing USPS tracking number 9505 5121 2921 9098 2161 17 addressed to "JAMie Lengo, 3321 SAlena AP1, St. Louis, Missouri 63118" with a return address of "Robert Freidah, 2724 Walnut St, Denver, CO 80205."  It is a USPS Priority Mail parcel; white in color with red trim and blue and red writing with clear packing tape; measuring approximately 12" X 3.5" X 14.125"; is postmarked April 8, 2019; with $14.35 in postage.

12.	Further investigation of the SUBJECT PARCEL and its addressees revealed many of the indicators I described above that are common in mail-facilitated controlled substances transactions:

- a. As is common in controlled substances transactions and/or proceeds from the sale of controlled substances, the person listed on the return address was not associated with the respective address.  A check of local and national proprietary and public records databases indicated that "Robert Freidah" was not associated with the 2724 Walnut St. address in Denver, Colorado 80205.
- b. As is common in controlled substances transactions and/or proceeds from the sale of controlled substances, the person listed on the delivery address was not associated with the respective address.  A check of local and national proprietary and public records databases indicated that "Jamie Lengo" was not associated with the 3321 Salena St. address in Saint Louis, Missouri 63118; with or without an apartment number.

    c. Furthermore, as I explained above, it is common for controlled substances, such as marijuana, to be shipped from drug-producing states like Colorado to states where marijuana is not as widely available, such as Missouri[1] and the proceeds from the sales of controlled substances are frequently returned to Colorado. This package thus fits the common profile of one involved in mail-facilitated controlled substance transactions.

### CANINE EXAMINATION OF THE SUBJECT PARCEL

13. On April 12 2019, I presented the SUBJECT PARCEL to the Denver Police Department for external examination by drug detection K9 "Axel." This examination was conducted in an open-air parking lot located at the Golden Main Office (post office) in Golden, Colorado. At approximately 1:57P.M., Detective/Canine Handler T. Tobin advised that K9 Axel, during external examination of the SUBJECT PARCEL, exhibited a change in behavior which is described as an "alert" consistent with the presence of the odor of a narcotic/controlled substance that K9 Axel is trained to recognize.

### QUALIFICATIONS OF DETECTIVE/CANINE HANDLER TOBIN

14. Detective Tobin has been employed by the City and County of Denver as a Police Officer since October 2007 working as a Narcotics Detective since May of 2012. In January of 2016, Detective Tobin was assigned to the Denver Police Department's Vice/Narcotics Bureau as a Narcotics K9 Handler with the Narcotics Interdiction Team. Detective Tobin completed the Denver Police Departments Narcotic K9 Handler Training Course and approved as a K9 Handler by Detective Don Brannan. Detective Tobin has been assigned Narcotic Detection K9 Axel

---

[1] Missouri voters approved the legalization of marijuana for medical uses in November 2018 and the measure took effect on December 5, 2018. However, because this limited legalization of marijuana is so recent, I believe it is likely that would-be consumers of marijuana in Missouri continue to seek marijuana from states with large sources of supply, such as Colorado.

since January of 2016.  K9 Axel is a Belgian Malinois dog trained to detect the odors of Heroin, Cocaine, Marijuana, Methamphetamine and MDMA.  K9 Axel has been assigned to the Denver Police Departments Vice/Narcotics Bureau since October of 2015.  Since October 2015, K9 Axel has received over 150 hours of narcotic odor detection training.  Detective Tobin and K9 Axel were re-certified by the National Canine Audit Tracking System, (NCATS) for the detection of the odors of Cocaine, Methamphetamine, Heroin, and Marijuana on August 1st, 2018.  Detective Tobin and K9 Axel were certified by the Colorado Police Canine Association (CPCA) for the detection of the odors of Cocaine, Methamphetamine, Heroin, and Marijuana. K9 Axel and Detective Tobin re-certified with CPCA on October 23rd, 2018 for those four narcotic odors and also certified for detection of the odor of MDMA.  Detective Tobin completed the Utah POST Narcotics Detector Dog Handler Program and was certified through that program on August 9th, 2017.

## CONCLUSION

15.     I respectfully request that this affidavit, which describes an ongoing covert investigation, and any resulting search warrant be **RESTRICTED** until further order of the Court in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Postal Inspectors and other investigative and law enforcement officers of the United States Postal Inspection Service, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

16. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I respectfully request that the notification of the execution of the warrant be delayed for a period not to exceed 30 days after the execution of the warrant. This is an ongoing investigation and disclosure of any search may lead to the destruction of evidence, the flight of the subjects of the investigation, and otherwise jeopardize the investigation.

Based on the foregoing facts, I submit probable cause exists to believe the parcel described in ATTACHMENT A contains the evidence, fruits, and instrumentalities of a violation of 21 U.S.C. § 841(a)(1) and or § 843(b). Therefore, I request permission to search that package for the items identified with particularity in ATTACHMENT B.

Respectfully submitted this 15th day of April 2019.

s/Rachel Sileski

United States Postal Inspector

Submitted, attested to, and acknowledged by reliable electronic means on April 15th, 2019.

_____
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLORADO

**Application for search warrant was reviewed and is submitted by Martha Paluch, Assistant United States Attorney.**

9